**FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                                          :      Chapter 11

In re:                                         :

                                                          :      Case No. 12-35381

        RAMZ Real Estate Co., LLC,      :

                                Debtor.     :

-------------------------------------------------------------X

## MEMORANDUM DECISION DENYING CONFIRMATION OF
## DEBTOR'S CHAPTER 11 PLAN

**A P P E A R A N C E S :**

Genova & Malin, Attorneys
Hampton Business Center
1136 Route 9
Wappingers Falls, New York 12590-4332
*Attorneys for the Debtor*
       By: Thomas Genova, Esq.

McNamee, Lochner, Titus & Williams, P.C.
677 Broadway
Albany, New York 12207
*Attorneys for the Community Preservation Corporation*
       By: Peter A. Pastore, Esq.

**CECELIA G. MORRIS**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

Before the Court is the confirmation of Debtor's plan and an objection to the confirmation of that plan by a creditor who controls two rejecting classes of claims. As the Debtor has failed to meet its burden under the new value exception to the absolute priority rule, the Court denies confirmation of the plan.

## Jurisdiction

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a) and the Standing Order of Reference signed by Chief Judge Loretta A. Preska dated January 31, 2012. This is a "core proceeding" under 28 U.S.C. § 157(b)(2)(L) (confirmations of plans).

## Background

RAMZ Real Estate Co., LLC (the "Debtor") owns two pieces of real property. *See* Vol. Pet., ECF No. 1; O'Neill Local R. 1007-2 Aff., ECF No. 1, Ex. 2. The first is a two-story, commercial property located in Highland, New York. Vol. Pet., ECF No. 1. The second is a three-story, mixed-use building containing four apartments and three commercial spaces located in Kingston, New York ("Kingston Property"). *Id.* The Kingston Property is encumbered by a first mortgage in favor of Community Preservation Corporation ("CPC") in the amount of $744,000.00. *See* Second Amend. Plan 10, ECF No. 95, Ex. E. Prior to filing, Debtor was a defendant in a foreclosure action brought by CPC in the Supreme Court of Ulster County. O'Neill Local R. 1007-2 Aff., ECF No. 1, Ex. 2. On February 21, 2012, Debtor filed this chapter 11 case in order to attempt to restructure its debts. Vol. Pet., ECF No. 1. On October 19, 2012, this Court entered an order valuing the Kingston Property at $485,000.00. Order, ECF No. 53.

On July 5, 2013, the Debtor proposed its second amended plan of reorganization (the "Plan"), the confirmation of which is currently before the Court. *See* Plan, ECF No. 95, Ex. E.

The Plan contains seven classes. *Id.* at 9-13. Class 1 contains administrative expense claims that will be paid in full. *Id.* at 9-10. Class 2 is comprised of the property tax claim of Kingston City School District. *Id.* at 10. The sole Class 2 claim was paid in full and expunged pursuant to this Court's August 23, 2013 order. Order, ECF No. 109.

Class 3 contains the secured claim of CPC in the amount of $474,000.[1] Plan 10-11. According to the Plan, this class is impaired and its vote was solicited. *Id.* at 11. Class 4 consists solely of the secured property tax claim of the County of Ulster ("Ulster"). *Id.* The claim of Ulster is classified as impaired and as such, it is entitled to vote. Class 5 contains the secured claim of Yardvine Equities Corporation ("Yardvine"). *Id.* at 11-12. The Plan states that Yardvine is not impaired and as such, is not entitled to vote. *Id.*

Class 6 contains the unsecured claims of CPC and VSR, Inc. *Id.* at 12-13. VSR, Inc. is wholly owned by Debtor's 100% shareholder, Ronan O'Neill ("O'Neill"). Memo of Law 5, ECF No. 164. If CPC rejects the Plan, VSR, Inc. will waive its unsecured claim against the Debtor and will not receive a distribution through Class 6. *Id.* at 12. Through the plan, this class will receive 10% of its claims over the course of sixty months. *Id.* at 12-13. The unsecured portion of CPC's claim is valued at approximately $270,000; CPC will receive $27,000. *Id.* Class 6 is an impaired class and it entitled to vote on the Plan. *Id.* at 13.

Class 7 contains the interest of O'Neill. *Id.* Pursuant to the Plan, O'Neill will retain 100% of his ownership interest in the Debtor—though he will not receive any dividends or payments under the Plan. *Id.* Class 7 is not impaired and as such, not entitled to vote on the Plan. *Id.*

CPC cast votes to reject the Plan for both its secured claim in Class 3 and its unsecured claim in Class 6. *See* Ballot, ECF No. 112; Ballot, ECF No. 113. Both of those classes rejected

---

[1] This was calculated by subtracting pre-petition real property taxes from the secured portion of the claim.

the Plan. The sole remaining impaired class is Class 4, which consists entirely of Ulster's secured property tax claim. Ulster voted to accept the Plan by docketing a ballot on August 29, 2013. *See* Cert. of Ballots, ECF No. 111.

On September 18, 2013, CPC filed an objection to confirmation of the Debtor's Plan. *See* Obj., ECF No. 115. On March 4, 2014, the Court held a hearing to consider the confirmation of the Debtor's Plan. After the hearing, the Court allowed the parties to file supplemental briefs. The Debtor and CPC filed legal briefs on March 31, 2014. *See* Memo. of Law, ECF No. 163; Memo. of Law, ECF No. 164.

## Discussion

CPC makes several arguments for why confirmation should be denied, including that Debtor's Plan contains classes that are artificially impaired, Debtor's projected income and expenses will result in a liquidation or need for an additional reorganization, Debtor's Plan violates the absolute priority rule, CPC's treatment in Class 3 is insufficient, Debtor cannot confirm the Plan over CPC's opposition, and no impaired classes have accepted. Obj. 3-11, ECF No. 114. In its supplemental objection to confirmation, filed on March 31, 2014, CPC also argues that Debtor cannot deem Ulster to have accepted the plan for purposes of § 1129(b) cramdown, since Ulster has not affirmatively voted to accept the Plan. Memo of Law, ECF No. 163. At the hearing held on April 29, 2014, both parties agreed that Ulster has affirmatively voted in favor of the Plan and that issue is no longer contested.

On October 25, 2014, the Debtor filed a response to CPC's objection to confirmation in which the Debtor acknowledged that the Plan could only be confirmed under § 1129(b). Resp. 2, ECF No. 126.

**Standard for confirmation under § 1129.**

Section 1129 of the Bankruptcy Code provides the two requirements that a debtor must meet in order to confirm a chapter 11 plan. 11 U.S.C. § 1129. Section 1129(a)(8) requires that each impaired class of claims accept the plan. *Boston Post Rd. Ltd. P'ship v. Fed. Deposit Ins. Corp. (In re Boston Post Rd. Ltd. P'ship)*, 21 F.3d 477, 480 (2d Cir. 1994). If this is not possible, § 1129(a)(10) permits a plan to be "crammed down" over the objection of every other class of creditors pursuant to § 1129(b) so long as at least one class of impaired claims held by non-insider creditors has accepted the plan. 11 U.S.C. § 1129(a)(10). In order to cram a plan down, the plan must meet all of the statutory requirements provided in § 1129(b), in addition to those provided in §1129(a). *Id.* Cramdowns are common in cases where a debtor is seeking to reorganize a debt secured by real estate. *Boston Post*, 21 F.3d at 480.

In cases such as this one, where a secured creditor is undersecured, the debtor may bifurcate the claim of the creditor into secured and unsecured portions pursuant to § 506(a). *Id.* A secured creditor can then elect to have its entire claim treated as secured notwithstanding § 506(a) with the help of § 1111(b)(2). *Id.* CPC did not elect such treatment and, as such, CPC controls both the secured and unsecured class of claims. Since it voted to reject the plan in both classes, the only way the Plan may be confirmed is if Debtor satisfies the cramdown provisions of § 1129(b).

**Is Class 4 "impaired"?**

Before the Plan can be crammed down over CPC's objection, § 1129(a)(10) requires the affirmative acceptance of the plan by at least one impaired class of claims. *See In re RYYZ, LLC*, 490 B.R. 29, 39-40 (Bankr. E.D.N.Y. 2013) (explaining that in single asset real estate cases § 1129(a)(10) is a powerful tool of creditors). The question here is whether for purposes of

cramdown Class 4 counts as an accepting "impaired" class, where it is being paid in full over five years at 9% interest.

Section 1124 states that a claim is impaired unless the plan "leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest . . . ." 11 U.S.C. § 1124.  Where a section of the Bankruptcy Code alters a creditor's claim, that claim is not considered "impaired" by the plan as it is not the plan, but instead the Code, that impairs its treatment. *In re Am. Solar King Corp.*, 90 B.R. 808, 819 (Bankr. W.D. Tex. 1988) ("Impairment results from what the plan does, not what the statute does.").

Sections 1129(a)(9)(C)(iii) and (D) permit unsecured and secured priority tax claims, respectively, to be paid "regular installment payments in cash . . . of a total value, as of the effective date of the plan, equal to the allowed amount of such claim." 11 U.S.C. § 1129(a)(9)(C)-(D).  Section 511 provides that the rate of interest to be paid on tax claims "shall be the rate determined under applicable nonbankruptcy law." 11 U.S.C. § 511(a).  Pursuant to New York Real Property Tax Law § 924-a, the Debtor is required to pay 12% interest on the tax claim of Ulster.  N.Y. Real. Prop. Tax Law § 924-a (McKinney 2014).

In *In re Bryson Properties, XVIII*, the Fourth Circuit noted that "priority tax claimants, which receive preferential treatment under the Code (*see* 11 U.S.C. § 1129(a)(9)(C)), are not an impaired class that can accept a plan and bind other truly impaired creditors to a cram down." 961 F.2d 496, 501 (4th Cir. 1992).  Unlike in *Bryson Properties*, where the tax claim was being paid what it was entitled to under the Bankruptcy Code, in this case Ulster is receiving only 9% interest instead of the 12% that it is entitled to receive under New York Real Property Tax law. The Court finds that this is an impairment of Ulster's claim. *See In re G.L. Bryan Invs., Inc.*, 2006 Bankr. LEXIS 577, at *5 (Bankr. D. Colo. Mar. 8, 2006) ("[I]f the Debtor intends to reduce

the interest rate and/or pay the unsecured creditors over time . . . the unsecured creditors are impaired creditors under the Bankruptcy Code."); *see also In re Gramercy Twins Assocs.*, 187 B.R. 112, 118 (Bankr. S.D.N.Y. 1995) (finding that a 5% impairment of a tax lien is sufficient to satisfy § 1129(a)(10)); *Boston Post*, 21 F.3d at 483-84 (alluding to, without stating, that a creditor may be impaired if given a lower interest rate that it is otherwise entitled to be paid).

**Is Ulster's impairment "artificial"?**

Congress explicitly permitted a debtor to confirm a plan of reorganization where one or more classes had expressly rejected the plan. *See* 11 U.S.C. § 1129(b); Collier on Bankruptcy ¶ 1129.03 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.). This can only be done if at least one impaired class has accepted the plan. 11 U.S.C. § 1129(a)(10). In order to cajole acceptance by one class of creditors, debtors often create an impaired class by changing the terms of repayment minimally or by improving a creditor's treatment under the plan. *See In re Greenwood Point, LP*, 445 B.R. 885, 907 (Bankr. S.D. Ind. 2011).

Where a debtor's motivation in altering the treatment of a class is solely to obtain approval by at least one impaired class, that class is considered to be "artificially impaired" and its acceptance of the plan cannot be used to satisfy § 1129(a)(10). *Id.* at 908. Where the debtor can show a legitimate business purpose for impairing a class, the class is not considered "artificially impaired." *Id.* It should be noted that nothing in the Code prevents a debtor from negotiating a plan in order to gain acceptance and nothing requires a debtor to employ effort in creating unimpaired classes. *Id.* In fact, the Code contemplates that a debtor will indeed impair classes of claim in its plan of reorganization. *See* 11 U.S.C. § 1124.

The Debtor argues that it has a legitimate business purpose for impairing Ulster as lowering the interest rate from 9% to 12% lowers the Debtor's monthly plan payments and helps

keep the Debtor within a budget. Memo of Law 4, ECF No. 164. The Court agrees that a 3% interest rate decrease is not "*de minimis*," especially in light of the current financial situations that many government entities have faced in the last several years. *See Greenwood Point*, 445 B.R. at 908. Ulster could have demanded to be paid 12% interest and yet, it chose to accept the plan. The Court finds that Ulster is not "artificially impaired."

**Does the Plan satisfy the absolute priority rule?**

Cramdown has two requirements that must be met. 11 U.S.C. § 1129(b). Debtor must meet all of the requirements in § 1129(a) except for acceptance by all impaired classes. 11 U.S.C. § 1129(b)(1). The objection of the rejecting creditor may then be overridden only "if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan." *Id.*

> As to a dissenting class of impaired unsecured creditors, such a plan may be found to be "fair and equitable" only if the allowed value of the claim is to be paid in full, § 1129(b)(2)(B)(i), or, in the alternative, if "the holder of any claim or interest that is junior to the claims of such [impaired unsecured] class will not receive or retain under the plan on account of such junior claim or interest any property," § 1129(b)(2)(B)(ii). That latter condition is the core of what is known as the "absolute priority rule."

*Bank of Am. Nat'l Trust & Savs. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 441-42 (1999) (alteration in original). Here, CPC rightly contends that its Class 6 unsecured claim is not being paid in full while a junior class—O'Neill's Class 7 equity interests—are retaining their 100% ownership of the Debtor. Pursuant to § 1129(b)(2)(B)(ii), this is not "fair and equitable" as to CPC's Class 6 unsecured claim. Unless an exception to the absolute priority rule applies, the Plan may not be crammed down over CPC's objection.

**Does the "new value" exception to the absolute priority rule apply?**

The Debtor argues that the absolute priority rule has been satisfied as the Debtor's principal, O'Neill, has provided new value to the Debtor in the form of a $15,000 monetary contribution. *See* Memo of Law 5, ECF No. 164. Recognizing that sometimes the best option for all parties is to allow old equity to participate in the reorganized debtor, the "new value exception" was created. *BT/SAP Pool C Assoc., L.P. v. Coltex Loop Cent. Three Partners, L.P. (In re Coltex Loop Cent. Three Partners, L.P.)*, 203 B.R. 527, 531-32 (S.D.N.Y. 1996), *aff'd* 138 F.3d 39 (2d Cir. 1998).

Although this "exception" is not codified, it dates back almost as far as the rule itself and has sometimes been referred to as a corollary to the rule, rather than an exception. *Coltex*, 203 B.R. at 532; *In re Red Mountain Mach. Co.*, 448 B.R. 1, 13 n.35 (Bankr. D. Ariz. 2011). In new value cases, courts focus on whether old equity is retaining property "on account of" its prior interest." *See Coltext*, 203 B.R. at 534. A debtor relying on the new value exception must show that the capital contribution by old equity is: "(1) new, (2) substantial, (3) money or money's worth, (4) necessary for a successful reorganization and (5) reasonably equivalent to the property that old equity is retaining or receiving." *Id.* CPC does not dispute factors (1) and (3). Thus, only factors (2), (4) and (5) are in contention.

Under the fourth prong of the test (whether the contribution is necessary), the debtor has the burden of showing that the funds are necessary for the reorganization and that it was "necessary" for the old equity to be the one who contributes those funds and that equity in a reorganized debtor must be determined in accordance with the market. *Coltext*, 203 at 535. In *La Salle*, the Supreme Court stated a plan was "doomed . . . by its provision for vesting equity in the reorganized business in the Debtor's partners without extending an opportunity to anyone

else either to compete for that equity or to propose a competing reorganization plan." *LaSalle*, 526 U.S. at 454. The Court was not persuaded by the argument the opportunity to propose a plan and invest capital in the reorganized debtor may be worthless to everyone except old equity. *Id.* at 455 ("While it may be argued that the opportunity has no market value, being significant only to old equity holders owing to their potential tax liability, such an argument avails the Debtor nothing . . . ."). The Court went on to state:

> Whether a market test would require an opportunity to offer competing plans or would be satisfied by a right to bid for the same interest sought by old equity is a question we do not decide here. It is enough to say, assuming a new value corollary, that plans providing junior interest holders with exclusive opportunities free from competition and without benefit of market valuation fall within the prohibition of § 1129(b)(2)(B)(ii).

*Id.* at 458. Based on the Supreme Court's mandate in *LaSalle*, there is no possibility but to deny confirmation of the Plan in this case. Debtor has not provided for a competing plan nor is there evidence that any other party was given an opportunity to bid on the interest sought by new equity.

That is not to say that this Court is not sympathetic to the situation that this Debtor faces. The Court is well aware that Debtor and CPC could both benefit from confirmation of the Plan. However, the Supreme Court explained in *Norwest Bank Worthington v. Ahlers*, a bankruptcy court should not substitute its judgment for that of the creditors, which are entitled to vote on a plan. 485 U.S. 197, 207 (1988). In enacting chapter 11, "Congress adopted the view that creditors . . . are . . . better judges of the debtor's economic viability and their own economic self-interest than the courts, trustees, or the SEC" and that "the Chapter 11 process relies on creditors and equity holders to engage in negotiations towards resolution of their interests." *LaSalle*, 526 U.S. at 457 n.28.

As the Court finds that Debtor has not met the necessary prong of this test, it Court need not address whether the contribution is substantial or whether the new value is reasonably equivalent to the property that old equity is retaining or receiving. If Debtor does choose to file a new plan, it should be prepared to offer evidence on all three of these disputed prongs.

**Is the Plan feasible?**

CPC also alleges that the Debtor has failed to meet § 1129(a)(11). Obj. 4-5, ECF No. 114. CPC alleges that the Debtor's projected income and expenses, which are attached to its second amended disclosure statement, show that the Debtor cannot demonstrate that this Plan will not be followed by liquidation or the need for a further financial reorganization. *Id.* In its response, the Debtor states that the income and expenses that were attached to the second amended disclosure statement are inaccurate. Resp., ECF No. 126. New statements are attached to the response. *Id.* (exhibits A-D). Debtor argues that the commercial space in its Kingston property will be rented as a pizzeria. *Id.* at 5. The tenant is allegedly obtaining a beer and wine license and monthly rent will be $1500 per month. *Id.* The Debtor also proposes to install coin-operated washers and dryers in the basement of the Kingston Property, which it expects will generate $3,000 per year. *Id.* The Debtor alleges that O'Neill will perform all maintenance on the properties free of charge. *Id.* Based upon this, the Debtor argues that the Plan is feasible. *Id.*

Section 1129(a)(11) requires that the plan is not likely to be followed by liquidation or the need for further financial reorganization. 11 U.S.C. § 1129(a)(11). The standard for whether a plan is feasible is "whether the plan offers a reasonable assurance of success. Success need not be guaranteed." *Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 843 F.2d 636, 649 (2d Cir. 1988). In making this determination, a "bankruptcy court has an obligation to scrutinize the plan carefully to determine whether it offers a reasonable prospect of success and

is workable." *Monnier Bros. v. Monnier (In re Monnier Bros.)*, 755 F.2d 1336, 1341 (8th Cir. 1985).  Courts have considered the following factors to make such a determination: (1) the adequacy of the debtor's capital structure; (2) the earning power of its business; (3) economic conditions; (4) the ability of the debtor's management; (5) the probability of the continuation of the same management; and (6) any other related matters which determine the prospects of a sufficiently successful operation to enable performance of the provisions of the plan.  Collier on Bankruptcy ¶ 7-1129[11].

As the Court has already determined that the Plan is not confirmable, it need not consider the factors.  In the event that the Debtor files an amended plan, it should be prepared to present evidence in accordance with these factors.

## Conclusion

For the foregoing reasons, confirmation of the Plan is denied, without prejudice to Debtor filing a new plan consistent with this Memorandum Decision. CPC should submit an order consistent with this Memorandum Decision.

Dated: Poughkeepsie, New York
      May 9, 2013                    /s/ Cecelia G. Morris
                                        CECELIA G. MORRIS
                                        CHIEF UNITED STATES BANKRUPTCY JUDGE